UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ALBERT RICHARDS, | No. C 06-3697 MHP (pr) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| A. P. KANE, warden, | |
| Respondent. | |

## INTRODUCTION

Daniel Albert Richards, an inmate at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Richards was convicted in Los Angeles County Superior Court of second degree murder and was sentenced on November 17, 1988 to 15 years to life in prison. His habeas petition does not challenge his conviction but instead challenges a December 7, 2004 decision of the Board of Parole Hearings ("BPH") that found him not suitable for parole. This parole hearing was conducted at a time when he was 17 years into his 15-to-life sentence.

The BPH identified the circumstances of the commitment offense, Richards' insufficient participation in the recommended self-help programming and a problem with his parole plans as the reasons for its decision. The BPH also noted that the district attorney and the Los Angeles County Sheriff opposed parole.

1      Richards sought relief in the California courts.  The Los Angeles County Superior
2  Court denied his petition for writ of habeas corpus in a reasoned decision.  The California
3  Court of Appeal and the California Supreme Court denied his habeas petitions with a citation
4  to In re Dannenberg, 34 Cal. 4th 1061 (Cal. 2005).
5      Richards then filed his federal petition for a writ of habeas corpus.  The court found
6  cognizable a claim that his right to due process was violated because the evidence was
7  insufficient to support the BPH's decision that he was unsuitable for parole.  Respondent
8  filed an answer and Richards filed a traverse.
9      The court earlier indicated that it intended to wait for guidance from the anticipated en
10 banc decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir.), reh'g en banc granted, 527
11 F.3d 797 (9th Cir. 2008).  Although much time has passed, Hayward remains pending in the
12 appellate court and it is unknown to this court when the decision will be released.  The court
13 will proceed to decide the merits of the petition without the benefit of the Hayward decision.

## JURISDICTION AND VENUE

15     This court has subject matter jurisdiction over this habeas action for relief under 28
16 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged
17 action concerns the execution of the sentence of a prisoner housed at a prison in Monterey
18 County, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

20     Prisoners in state custody who wish to challenge collaterally in federal habeas
21 proceedings either the fact or length of their confinement are required first to exhaust state
22 judicial remedies, either on direct appeal or through collateral proceedings, by presenting the
23 highest state court available with a fair opportunity to rule on the merits of each and every
24 claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  Respondent contends
25 that Richards did not exhaust state court remedies for his claim.  Although his due process
26 claim regarding the sufficiency of the evidence was not clearly articulated in the California
27 Supreme Court, it does appear to be encompassed within the argument at page 13 of the
28 petition for review.  The sufficiency of the evidence claim is exhausted.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

## DISCUSSION

A.  Due Process Requires That Some Evidence Support a Parole Denial

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the BPH. Sass, 461 F.3d at 1128 (quoting Superintendent v. Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and

1  assures that 'the record is not so devoid of evidence that the findings of the . . . board were
2  without support or otherwise arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472
3  U.S. at 457).  The some evidence standard of Superintendent v. Hill is clearly established law
4  in the parole context for purposes of § 2254(d).  Sass, 461 F.3d at 1129.  As a matter of state
5  law, the parole authority's decision must also satisfy the "some evidence" standard of review.
6  See In re Lawrence, 44 Cal. 4th 1181, 1191 (Cal. 2008) (state court "standard of review
7  properly is characterized as whether 'some evidence' supports the conclusion that the inmate
8  is unsuitable for parole because he or she currently is dangerous").
9      Having determined that there is a due process right, and that some evidence is the
10 evidentiary standard for judicial review, the next step is to look to state law because that sets
11 the criteria to which the some evidence standard applies.  One must look to state law to
12 answer the question, "'some evidence' of what?"
13 B.    State Law Standards For Parole For Murderers In California
14     California uses indeterminate sentences for most non-capital murderers, with the term
15 being life imprisonment and parole eligibility after a certain minimum number of years.  A
16 first degree murder conviction yields a minimum term of 25 years to life and a second degree
17 murder conviction yields a minimum term of 15 years to life imprisonment.  See In re
18 Dannenberg, 34 Cal. 4th 1061, 1078 (Cal. 2005); Cal. Penal Code § 190.  The upshot of
19 California's parole scheme described below is that a release date normally must be set unless
20 various factors exist, but the "unless" qualifier is substantial.
21     A BPH panel meets with an inmate one year before the prisoner's minimum eligible
22 release date "and shall normally set a parole release date. . . . The release date shall be set in a
23 manner that will provide uniform terms for offenses of similar gravity and magnitude in
24 respect to their threat to the public, and that will comply with the sentencing rules that the
25 Judicial Council may issue and any sentencing information relevant to the setting of parole
26 release dates."  Cal. Penal Code § 3041(a).  Significantly, that statute also provides that the
27 panel "shall set a release date unless it determines that the gravity of the current convicted
28 offense or offenses, or the timing and gravity of current or past convicted offense or offenses,

1   is such that consideration of the public safety requires a more lengthy period of incarceration
2   for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal.
3   Penal Code § 3041(b).

4      One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole
5   date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A
6   parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A
7   parole date set under this article shall be set in a manner that provides uniform terms for
8   offenses of similar gravity and magnitude with respect to the threat to the public."[1] The
9   regulation also provides that "[t]he panel shall first determine whether the life prisoner is
10  suitable for release on parole. Regardless of the length of time served, a life prisoner shall be
11  found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose
12  an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. §
13  2402(a). The panel may consider all relevant and reliable information available to it. 15 Cal.
14  Code Regs. § 2402(b).

15     The regulations contain a matrix of suggested base terms for several categories of
16  crimes. See 15 Cal. Code Regs. § 2403. For example, for second degree murders, the matrix
17  of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years,
18  depending on some of the facts of the crime. The statutory scheme places individual
19  suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to
20  ensure term uniformity. Dannenberg, 34 Cal. 4th at 1070-71. Under state law, the matrix is
21  not reached unless and until the prisoner is found suitable for parole. Id. at 1070-71; 15 Cal.
22  Code Regs. § 2403(a).

23     The "Penal Code and corresponding regulations establish that the fundamental
24  consideration in parole decisions is public safety . . . [T]he core determination of 'public
25  safety' under the statute and corresponding regulations involves an assessment of an inmate's
26  current dangerousness." Lawrence, 44 Cal. 4th at 1205 (emphasis in source).[2]

27     A critical issue in parole denial cases concerns the parole authority's use of evidence
28  about the murder that led to the conviction. Three Ninth Circuit cases provide the guideposts

5

1  for applying the Superintendent v. Hill some evidence standard on this point: Biggs v.
2  Terhune, 334 F.3d 910 (9th Cir. 2003), Sass, 461 F.3d 1123, and Irons v. Carey, 505 F.3d
3  846 (9th Cir. 2007).[3]  Biggs explained that the value of the criminal offense fades over time
4  as a predictor of parole suitability:  "The Parole Board's decision is one of 'equity' and
5  requires a careful balancing and assessment of the factors considered. . . .  A continued
6  reliance in the future on an unchanging factor, the circumstance of the offense and conduct
7  prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system
8  and could result in a due process violation."  Biggs, 334 F.3d at 916-17.  Biggs upheld the
9  initial denial of a parole release date based solely on the nature of the crime and the
10 prisoner's conduct before incarceration, but cautioned that "[o]ver time . . ., should Biggs
11 continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a
12 parole date simply because of the nature of Biggs' offense and prior conduct would raise
13 serious questions involving his liberty interest in parole."  Id. at 916.  Next came Sass, which
14 criticized the Biggs statements as improper and beyond the scope of the dispute before the
15 court:  "Under AEDPA it is not our function to speculate about how future parole hearings
16 could proceed."  Sass, 461 F.3d at 1129.  Sass determined that the parole board is not
17 precluded from relying on unchanging factors such as the circumstances of the commitment
18 offense or the petitioner's pre-offense behavior in determining parole suitability.  See id.
19 (commitment offenses in combination with prior offenses provided some evidence to support
20 denial of parole at subsequent parole consideration hearing).  Sass also put to rest any idea
21 from Biggs that the commitment crime and pre-offense behavior only support the initial
22 denial of parole.  Irons determined that due process was not violated by the use of the
23 commitment offense and pre-offense criminality to deny parole for a prisoner 16 years into
24 his 17-to-life sentence.  Irons emphasized that all three cases (Irons, Sass and Biggs) in
25 which the court had "held that a parole board's decision to deem a prisoner unsuitable for
26 parole solely on the basis of his commitment offense comports with due process, the decision
27 was made before the inmate had served the minimum number of years required by his
28 sentence."  Irons, 505 F.3d at 853.  Interpreting this statement from Irons to suggest that the

6

offense can only be relied on until the minimum number of years has been reached would suffer the same problem that Sass identified in Biggs: it is not the holding of the case. The dicta in Biggs and Irons are speculative and do not determine when a denial of parole based solely upon the commitment offense or pre-offense behavior violates due process. Neither logic nor Irons compel a decision that such reliance must cease when the prisoner reaches the minimum number of years in his sentence, such as the fifteenth year of a 15-to-life sentence.

The upshot of these three cases is that the BPH can look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not currently suitable for parole even after the initial denial (Sass), but the weight to be attributed to those immutable events should decrease over time as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior (Biggs and Irons). Sass did not dispute the principle that, other things being equal, a murder committed 50 years ago is less probative of a prisoner's current dangerousness than one committed 10 years ago. Not only does the passage of time in prison count for something, exemplary behavior and rehabilitation in prison count for something according to Biggs and Irons. Superintendent v. Hill's standard might be quite low, but it does require that the decision not be arbitrary, and reliance on only the facts of the crime might eventually make for an arbitrary decision.[4]

C.   Some Evidence Supports The BPH's Decision In Richards' Case

1.   BPH Decision

The BPH identified the circumstances of the commitment offense, Richards' insufficient participation in the recommended self-help programming and a problem with his parole plans as the reasons for its decision. The BPH also noted that the district attorney and the Los Angeles County Sheriff opposed parole. In its decision, the BPH observed that Richards had several positive attributes, including a recent favorable psychological report and generally good behavior in that he had not received a CDC-115 for over six years. His disciplinary history consisted of three CDC-115 rule violation reports (the most recent of which was in 1998 for making and possessing unauthorized materials), plus eleven CDC-128

7

counseling memoranda for lesser transgressions.  The BPH also commended him for obtaining his high school diploma, past participation in self-help and other programming, and receiving good work reviews in the machine shop.  Nonetheless, the positive aspects of his behavior did not outweigh the factors of unsuitability, in the BPH's view.

### a. Commitment Offense

In finding Richards unsuitable, the BPH relied primarily on the murder that led to his life sentence.  The BPH found that the murder was carried out in a "callous fashion" and a "cruel manner."  RT 50.  The murder was described in the probation officer's report.

> On September 6, 1987 at approximately 9:31 p.m. in the vicinity of 323 Rowan Avenue, East Los Angeles, California, victim Lopez and companion had been walking down the street when they were approached by several people including defendant and co-defendant.  One of the people said "what did you say?" in a hostile and provoking manner.  Defendant and co-defendant then began to hit and kick the victim and his companion.  Victim's brother was being hit and kicked.  Defendant and co-defendant were involved in the situation.  Someone had a baseball bat and began to hit victims.  The victims fell to the ground bleeding.  Defendant and co-defendant as well as others ran to 303 North Rowan and others ran to a Datsun B210 which was parked in front of that address.  The address was that of co-defendant and he was identified as being one of the culprits involved in the assault.  Defendant was also at that address and had what appeared to be fresh blood on his shoes. . . . Also, in the yard was found a baseball bat, rod, and transmission shaft by deputies.  Additionally, was found a wooden club and a tooled rod in the street near where the assault took place.  The bat was positively identified by one of the victims as the one used on the deceased.  The transmission shaft was also identified as a weapon used in the assault.

Resp. Exh. 5, probation officer's report at 2-3.[5]  Victim Ruben Lopez died about nine days later from blunt force trauma to the head which was consistent with being hit with a baseball bat.  "A witness to the assault identified the defendant and co-defendant as having hit the victim with a baseball bat."  Id at 3.  The probation officer also reported that one of the investigating police officers said that "the defendant and co-defendant got into a fight with the victim and appeared to start the fight.  Defendant was observed by a witness to hit the deceased with a baseball bat when he was down.  Defendant was not affiliated with the gang but younger gang members became involved."  Id. at 11.

The California Court of Appeal's June 11, 1991 opinion on the original appeal from the conviction stated that witnesses testified that Richards was in the initial group of 5 or the reinforcement group of 15 people who showed up to attack the victims.  The court also noted that one witness testified that Richards attacked victim Ruben Lopez with a metal baseball

8

1  bat and "swung the bat back and forth, from the left and right, and 'real fast.'" Resp. Exh. 3,
2  part 3 (California Court of Appeal opinion describing the evidence at trial about the killing),
3  p. 4. Richards reportedly hit the victim three times after he fell to the ground and was laying
4  still. Id.

5  Richards denied taking part in the beating of the victim. RT 11-16. He said that the
6  incident started when the victim attacked him (Richards), and that he (Richards) left before
7  anyone showed up to hit the victim with the bat. He blamed the killing on his brother. He
8  said he did not know "anything" about the killing until several days later after he was
9  released from jail. He had been arrested minutes after the attack at the house to which the
10 attackers had fled and at which the weapons used to beat the victims were found. He also
11 had fresh blood on his shoes that he was unable to explain. He also had given inconsistent
12 statements to police investigators. RT 42-43. The BPH did not believe Richards' denial of
13 responsibility and noted that the jury and court had not believed it. RT 50-51.

14          b.        Need For Self-Help Programming

15  The BPH's next reason for denying parole was "the fact that the inmate has not
16 participated in self-help since his last hearing, as had been previously recommended." RT
17 51. The BPH was particularly concerned that Richards had been told at the last Board
18 hearing that he needed to get some self-help done, yet he had not bothered to do so. See RT
19 3-34. Richards stated that he had taken the Project Change course at some time in the past,
20 and had taken all the self-help programs offered, and that nothing was available that he had
21 not already taken. RT 32.

22  The BPH recommended that Richards participate in more self-help programming.
23 This was necessary not only for him to "continue to delve into the causative factors for his
24 participation in the life crime, but to continue to develop those skills that will allow him to
25 remain law abiding and live within society . . . in a positive fashion." RT 52. The
26 commissioner seemed to believe that Richards was not taking seriously enough the need to
27 do self-help work. See RT 53-54. Even if there were no formal courses available, he could
28 try alternative methods, such as correspondence courses and books as many other inmates

9

1  did. RT 54.

2              c.      Parole Plans

3       The BPH stated that an additional reason for the denial of parole was that Richards
4  had inadequate parole plans. RT 51. This was a concern with a specific part of his parole
5  plans: he planned to live at the very same house at which he had been arrested. RT 51-52;
6  see RT 22. Richards intended to live with his fiancé when released from prison. His fiancé
7  was the sister of his now-deceased co-defendant, and the sister still lived in the same house.
8  RT 22-23. The BPH believed that "returning to an area with such negative overtones" was
9  "certainly not a situation to set him up for a successful parole." RT 52.

10      The BPH's concern was a reasonable one, especially since the murder appeared to
11 have gang overtones, even if Richards was not in a gang. Richards was in a rather large
12 group of men when he beat the victim to death. It would be reasonable to expect that some
13 of those persons lived near where the attack occurred and that some of them might still live
14 there. Apparently none of them had suffered a conviction for the attack, but they reasonably
15 be viewed as potential bad influences on Richards and impediments to a successful parole.

16      Even though the concern about Richards moving back to the same neighborhood was
17 legitimate, he had alternative parole plans to reside with his grandmother or his stepmother.
18 See RT 23-25. At least his stepmother lived in another city. He also had several letters of
19 support from people who indicated a desire to help him with residence plans and jobs if he
20 was paroled. RT 23-28.

21          2.      State Court Decisions

22      The Los Angeles County Superior Court's reasoned decision did not discuss the
23 sufficiency of the evidence to support the decision. That decision addressed Richards'
24 argument that he had to be released because he had reached his minimum eligible parole date
25 or the date he thought appropriate under the matrix. The superior court rejected the argument
26 because Richards was within the life maximum of his 15-to-life sentence. The California
27 Court of Appeal and California Supreme Court denied his petitions with citations to the
28 Dannenberg case. As mentioned in the in the "Exhaustion" section above, the evidentiary

sufficiency claim was encompassed within the petition presented to the California Supreme Court. The California Supreme Court's summary denial of the petition for review therefore included a rejection of the evidentiary sufficiency argument.

In light of the fact that the California Supreme Court gave no reasoned explanation of its rejection of Richards' federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Plascencia v. Alameida, 467 F.3d 1190, 1197-98 (9th Cir. 2006); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. Plascencia, 467 F.3d at 1198; Himes, 336 F.3d at 853.

### 3. Analysis Of Federal Claims

The BPH considered circumstances and factors proper under California law. A circumstance tending to indicate unsuitability for parole is that "the prisoner committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1). Beating someone to death with a baseball bat certainly qualifies as especially cruel. Although Richards denied being involved with the attack, the BPH was not obliged to accept his version especially since it was inconsistent with the verdict. There was evidence that Richards was the person who beat the victim to death with the baseball bat for no reason, and continued hitting him in the head with the bat after the victim had fallen to the ground. There also was evidence to support the BPH's decision that Richards had failed to participate in self-help programming since his last hearing despite the recommendation that he do so. There was some basis for a concern about this because Richards seemed to a commissioner not to be taking the need to strive for improvement seriously enough. Self-help programming would help him contemplate what led to the crime and develop skills needed for successful parole, according to the BPH. The need for further self-help is not specifically listed as a circumstance tending to indicate unsuitability under § 2402(c), but could be considered under § 2402(b), which provides that "[a]ll relevant, reliable information

available to the panel shall be considered in determining suitability for parole," including the applicant's "past and present attitude toward the crime."  Also, it shows the absence of one of the circumstances listed as tending to indicate suitability for parole.  See 15 Cal. Code Regs. § 2402(d)(3).  The BPH's ultimate conclusion was cast in terms of the requirement of California law, i.e., that Richards was not suitable for parole and "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  RT 50; see Lawrence, 44 Cal. 4th at 1191.

This court gives no weight to the parole plan problem because Richards had alternative housing available that would have addressed the concern about him returning to the neighborhood of the crime.  The BPH may have mentioned this housing problem for future reference, so that Richards would understand he needed to firm up his plans to live elsewhere.  It would have been a fair point to make on this reasoning – i.e., that a plan to return to the same house where he was arrested would not be an acceptable parole plan – but the BPH should have explained its reasoning more clearly.

The BPH recognized that there was positive information about Richards' performance in prison.  However, and notwithstanding the positive factors for Richards, the BPH determined that, 17 years into his 15-to-life sentence, the murder plus his failure to do the recommended self-help programming showed that he posed an unreasonable risk of danger to society if released from prison.  The BPH did not act arbitrarily or capriciously or without some evidentiary support in determining that Richards currently presented an unreasonable risk of danger to society if released from prison.  Bearing in mind that the court's chore is to consider not whether some evidence supports the reasons, but whether some evidence supports the conclusion that Richards' release unreasonably endangers public safety, this court concludes that there was some evidence to support the BPH's conclusion.   The California Supreme Court's rejection of his insufficient evidence claim was not contrary to or an unreasonable application of the Superintendent v. Hill some evidence standard.  Richards is not entitled to the writ.

**CONCLUSION**

For the foregoing reasons, the petition is denied on the merits. The motion to lift a stay is dismissed because this action was never stayed. (Docket # 9.) The clerk shall close the file.

IT IS SO ORDERED.

DATED: March 30, 2010

Marilyn Hall Patel
United States District Judge

# NOTES

1.   The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior.  15 Cal. Code Regs. § 2402(c).  The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior.  15 Cal. Code Regs. § 2402(d).

2.   The California Supreme Court's determination in <u>Lawrence</u>, 44 Cal. 4th 1181, that state law requires the parole authority to determine whether the inmate is unsuitable for parole because he currently is dangerous is binding in this federal habeas action.  <u>See</u> <u>Hicks v. Feiock</u>, 485 U.S. 624, 629-30 (1988).  However, <u>Lawrence</u> does not govern this court's analysis in every respect.  This court is not bound by the discussion in <u>Lawrence</u> (<u>see</u> footnote 4, <u>infra</u>) as to the evaluation of the commitment offense in determining whether the parole applicant currently is dangerous.  As to that point, <u>Lawrence</u> is persuasive authority, while the Ninth Circuit's holdings in <u>Sass</u>, <u>Biggs</u>, and <u>Irons</u> are binding authority.  Also, <u>Lawrence</u>'s determination that "some evidence" is the proper standard of judicial review, 44 Cal. 4th at 1211-12, does not bind this court because it is a state court decision and, in any event, was not determining the standard required by the federal constitution.

3.   <u>En</u> <u>banc</u> review is now pending in a fourth case regarding the some evidence standard, <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir.), <u>reh'g en banc granted</u>, 527 F.3d 797 (9th Cir. 2008).  The order granting <u>en</u> <u>banc</u> review states that the panel opinion is of no precedential value.

4.   The California Supreme Court discussed the use of the commitment crime to deny parole in the companion cases of <u>Lawrence</u>, 44 Cal. 4th 1181, and <u>In re Shaputis</u>, 44 Cal. 4th 1241 (Cal. 2008).  The court explained that where "evidence of the inmate's rehabilitation and suitability for parole under the governing statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity of the commitment offense, and that offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide 'some evidence' <u>inevitably</u> supporting the ultimate decision that the inmate remains a threat to public safety."  <u>Lawrence</u>, 44 Cal. 4th at 1191 (emphasis in source).  Applying that rule, the court determined that there was not some evidence to deny parole in <u>Lawrence</u> but that there was some evidence to deny parole in <u>Shaputis</u>.

5.   The ellipses in the quoted passage indicate the deletion of a sentence that stated that the blood on Richards' shoe matched that of the victim.  The sentence is omitted because it may not have been accurate.  According to the district attorney, the lab report stated that the blood "could not have originated from Salvador Lopez."  RT 48.  Salvador Lopez was the second victim and was the brother of murder victim Ruben Lopez.  Thus, it remains unclear whether the murder victim Ruben Lopez's blood was on Richards' shoe.